## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

KRISTOPHER D. KELLY,
                    Appellant,

                    v.

TENNESSEE VALLEY AUTHORITY,
                    Agency.

DOCKET NUMBER
AT-0752-15-0064-I-1

DATE: June 16, 2016

## THIS ORDER IS NONPRECEDENTIAL[1]

Jennifer B. Morton, Esquire, and Pat Kelly, Knoxville, Tennessee, for the appellant.

William T. Terrell, Knoxville, Tennessee, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1      The agency has filed a petition for review of the initial decision, which reversed the appellant's removal. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## DISCUSSION OF ARGUMENTS ON REVIEW

¶2 The appellant filed this appeal challenging the agency's action removing him from the position of Senior Nuclear Security Officer (NSO) at the Tennessee Valley Authority (TVA) Watts Bar Nuclear Plant in Spring City, Tennessee, effective September 11, 2014. Initial Appeal File (IAF), Tab 1. The agency based the action on a charge of failure to meet the requirements of the Senior NSO position due to medical restrictions.[2] IAF, Tab 21.

¶3 It is undisputed that the appellant was hired in June 2009, and that in 2013, he began to experience progressively more severe symptoms of an injury he sustained in 2005 while serving in the Department of the Army in Operation Iraqi Freedom. IAF, Tab 1. Because he was concerned about his symptoms, which include periodic loss of control over his legs, and his ability to respond in the event of an emergency, on November 19, 2013, the appellant had his physician write a letter detailing his medical restrictions. IAF, Tab 21 at 34. This letter stated that the appellant had been diagnosed with spastic gait, which interfered

---

[2] The NSO position is a law enforcement officer position that includes medical standards.

with "his ability to walk and makes running very difficult and decreases his ability to control his legs when necessary to stop," and that the appellant was having pain on the left side of his spine that was worsened by strenuous movement or activity. *Id.* This letter was provided to the agency in November 2013, and the agency immediately pulled the appellant's S11-Medical Clearance Form and placed him on administrative leave. IAF, Tab 30, Hearing Compact Disc (HCD). The appellant later met with the agency's Site Security Superintendent who advised him that the agency would look for a job for him, and he provided her with a copy of his résumé. On November 22, 2013, the Site Security Superintendent emailed the appellant's résumé to the Senior Human Resources (HR) Generalist for Watts Barr. IAF, Tab 21 at 22. The Site Security Superintendent stated in her email that the appellant "had his S11 pulled last night" and "he's asked if we could help finding him another position." *Id.*

¶4 The Senior HR Generalist testified that she had several conversations with the appellant by telephone and email about available jobs in TVA and about possible disability benefits and that she told him that he also should look for jobs. HCD. She also testified that she told him that she would do everything in her power to find him another position and that she followed the agency's standard process for reassignments by emailing his résumé to three other agency HR employees and asking if they knew of "anything in TVA in which he would be qualified." HCD; IAF, Tab 21 at 22. The Senior HR Generalist followed up with two additional emails asking to be contacted if the agency HR employees knew of an opening that might fit the appellant's qualifications. *Id.* On June 1, 2014, the agency proposed to remove the appellant from his position for failing to meet the medical requirements of his position, and his removal was effective on September 11, 2014.

¶5 On appeal, the administrative judge found that the medical documentation supported the agency's removal action by preponderant evidence. IAF, Tab 33, Initial Decision (ID) at 5. However, the administrative judge found that the

agency failed to make a good faith effort to accommodate the appellant through reassignment. ID at 8. The administrative judge found no documentary evidence that the agency ever performed a search of available positions for the appellant or any other evidence showing that anyone looked at the appellant's qualifications to see if he could be placed in any of the vacant, funded positions during the relevant time period. Furthermore, the administrative judge found that the agency failed to produce any position descriptions of available funded positions. Thus, the administrative judge found that the agency failed to engage in a good faith effort to accommodate the appellant. ID at 9. The administrative judge found further that the appellant identified a vacant position, Custodian (Trainee) (Job Opening ID No. 501479), as one of the positions to which he could be reassigned and that the agency failed to address the appellant's qualifications for this position or otherwise rebut his assertions that he was qualified to perform the position of Custodian (Trainee). ID at 10. Thus, based on the appellant's unrebutted testimony that he was qualified for at least one position on the vacancy list, the administrative judge found that the appellant established by preponderant evidence that the agency failed to meet its obligation to reasonably accommodate him by reassigning him to another position. Accordingly, the administrative judge reversed the agency's removal action finding that the agency discriminated against the appellant based on his disability. ID at 10-11.

¶6    On review, the agency argues that the appellant failed to prove his affirmative defense of disability discrimination.[3] Petition for Review (PFR) File, Tab 1. The agency asserts that the appellant failed to meet his burden of proof by identifying a vacant, funded position for which he was qualified, with or without accommodation, that existed at the time he requested accommodation. *Id.* at 17.

---

[3] The appellant, who was represented by his mother below and who is now represented by an attorney on review, does not challenge the administrative judge's determination that the agency proved the charge that he failed to meet the requirements of the Senior NSO due to medical restrictions. PFR File, Tab 8.

The agency contends that the appellant did not "request any particular reassignment opportunity" and he did not "articulate" prior to the hearing which of the 75 jobs on the job listing that he believed he was qualified for. *Id*. at 9. The agency argues that, it is only if the appellant satisfies his burden of establishing that he met the minimum requirements for a reassignment job that the burden shifts back to the agency to establish that the requested accommodation would create an undue hardship. *Id*.

¶7    We disagree. An agency must provide reasonable accommodation to the known limitations of a qualified individual with a disability unless to do so would create an undue hardship. 42 U.S.C. § 12112(a); *Simpson v. U.S. Postal Service*, 113 M.S.P.R. 346, ¶ 13 (2010); 29 C.F.R. § 1630.9. A qualified individual with a disability is a person with skills, training, and experience to perform the essential functions of a position, with or without reasonable accommodations. *Simpson*, 113 M.S.P.R. 346, ¶ 13; 29 C.F.R. § 1630.2(m). Reasonable accommodations may entail modifications to the individual's current position or reassignment to a vacant position. 42 U.S.C. § 12111(9); *Simpson*, 113 M.S.P.R. 346, ¶ 13; 29 C.F.R. § 1630.2(o).

¶8    A disability discrimination claim will fail under the Americans with Disabilities Act or the Rehabilitation Act if the employee never requested accommodation while employed. *Paris v. Department of the Treasury*, 104 M.S.P.R. 331, ¶ 17 (2006). Nevertheless, an employee only has a general responsibility to inform his employer that he needs accommodation for a medical condition. *Id*.; 29 C.F.R. Pt. 1630 App. § 1630.9. Once the employee has requested accommodation for a medical condition, the employer must engage in the interactive process in an effort to determine an appropriate accommodation. *Paris*, 104 M.S.P.R. 331, ¶ 17; *see* 29 C.F.R. § 1630.2(o)(3). As the Board has repeatedly stated, an employing agency is in a better position than a disabled employee to modify duties or working conditions to meet the needs of the

employee. *Paris*, 104 M.S.P.R. 331, ¶ 17; *Baker v. U.S. Postal Service*, 71 M.S.P.R. 680, 693 (1996).

¶9  With these principles in mind, we agree with the administrative judge that the appellant met his responsibilities. In November 2013, the appellant provided the agency a letter from his physician dated November 19, 2013, which advised the agency of his diagnosed medical condition of spastic gait and of his related medical restrictions. IAF, Tab 21 at 34. The appellant also discussed reassignment with the Site Security Superintendent. HCD. On November 22, 2013, the agency's Site Security Manager emailed the appellant's résumé to the Senior HR Generalist. IAF, Tab 21 at 23. After receiving his résumé, the appellant and the Senior HR Generalist had several conversations by telephone and email about available jobs in TVA, and the Senior HR Generalist testified that she told the appellant that she would do everything in her power to find him another job. *Id*. Thus, the record establishes that the appellant fully cooperated in the interactive process envisioned in 29 C.F.R. Pt. 1630 App. § 1630.9 by providing the letter from his physician and in his meeting and discussion with the Site Security Manager and the Senior HR Generalist.

¶10  The agency argues, in essence, that it was the appellant's duty to do all the searching for positions and to determine whether he met the requirements for the position descriptions for those positions. PFR File, Tab 1. The agency also contends that the Senior HR Generalist would have "assisted him if he had identified an open job that he was interested in." *Id.* at 9. The agency asserts that, because the appellant did not identify a specific position prior to the hearing, the agency "was not able to, and therefore did not, present rebuttal evidence, including medical testimony, to establish Appellant's lack of physical ability to perform the essential job duties of a custodian trainee." *Id.* at 9-10.

¶11  Courts generally have required the parties to engage in the interactive process in good faith. *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 15 (2014). Here, the agency appears to have made no effort to identify whether the

appellant met the qualifications for any of the positions on the job listing that it provided to him, and it is undisputed that the agency failed to provide him with the position descriptions to accompany any of the positions on those listings. The agency further failed to provide any of the position descriptions during the proceedings below, including the position description for the Custodian (Trainee) position. Thus, we agree with the administrative judge that the agency failed to make a good faith effort during the interactive process.

¶12   The administrative judge found, moreover, that the appellant proved by preponderant evidence that the agency discriminated against him based on his disability because he identified a vacant position to which he could be assigned and the agency failed to address his qualifications for this position or otherwise rebut his assertions that he was qualified to perform the Custodian (Trainee) position. We agree with the administrative judge that the appellant identified a vacant funded position and the agency failed to rebut his assertions that he was qualified for that position below.[4] Accordingly, we affirm the initial decision.

**ORDER**

¶13   We ORDER the agency to cancel the removal and to restore and reassign the appellant to the Custodian (Trainee) position, or to another position at or below the appellant's former grade level for which he is qualified, effective September 11, 2014. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶14   We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel

---

[4] On review, the agency has submitted alleged new evidence in support of its argument that the appellant is not qualified to perform the Custodian (Trainee) position. PFR File, Tab 1 at 29-62. Because the agency has failed to show that this evidence was unavailable prior to the close of the record below despite its due diligence, we have not considered it. *See Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980).

Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶15      We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶16      No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶17      For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set out at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your attorney fees motion with the office that issued the initial decision on your appeal.

**NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS**

You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:                 _____
                               William D. Spencer
                               Clerk of the Board

Washington, D.C.

|  | **DFAS CHECKLIST**<br><br>**INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |
|---|---|

AS CHECKLIST: INFORMATION REQUIRED BY IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc., with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

   a. Outside earnings with copies of W2's or statement from employer.
   b. Statement that employee was ready, willing and able to work during the period.
   c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



## NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63)
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2.  Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3.  Outside earnings documentation statement from agency.

4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.

5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.